

**ORIGINAL**

### United States District Court
### Northern District of Georgia
### Atlanta Division

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 2 2 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| Juan Jose Rosales, Elizardo Rivera Sanchez, Jesus Gomez Velasquez, and Maitin Maitinez Velasquez, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| **COMPLAINT** | ) ) |
| v. | ) ) |
| Geren Rides, Inc., a Georgia Corporation, | ) ) ) ) |
| Defendant. | ) ) ) |

1 09-CV-1390

**CAP**

## PRELIMINARY STATEMENT

1.     This is a civil action brought on behalf of the named plaintiffs, Mexican nationals, and all similarly situated H-2B workers (hereinafter collectively referred to as "Plaintiffs") who were recruited by Defendants to work for them as production helpers under the H-2B visa program, 8 U.S.C. § 1101(a)(15)(H)(ii)(b). Plaintiffs worked at various locations throughout the Southeast United States since 2007. As production helpers, the Plaintiffs worked grueling hours for little

compensation. Here they assert the rights afforded to them by the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq*. ("FLSA") and state laws regulating their employment and common law. They bring this action individually on their own behalf and on behalf of a class of similarly situated individuals.

2.      Plaintiffs allege that Defendant Geren Rides, Inc. ("Geren Rides") failed to pay them minimum wages and overtime as required by the FLSA. Plaintiffs further contend that Geren Rides violated the FLSA's record keeping provision requiring employers maintain payroll records and issue wage statements as required by applicable federal regulations. Finally, Plaintiffs' allege Defendant breached the terms and conditions of their respective work contracts.

3.      Plaintiffs seek an award of money damages stemming from Defendants' illegal conduct. Plaintiffs also seek injunctive relief to ensure that they and other class members will not be subjected to similar violation of the law in the future by Geren Rides.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this is an action arising under the FLSA, and by the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

2

## VENUE

5.    Venue is appropriate under 28 U.S.C. § 90 because Defendant transacts

business in this District and the acts complained of occurred in this District.

## PARTIES

### Plaintiffs

6.    Plaintiffs, Juan Jose Rosales, Elizardo Rivera Sanchez, Jesus Gomez

Velasquez, and Maitin Maitinez Velasquez, are Mexican nationals who reside in

México.  Plaintiffs bring this case on behalf of themselves and a class of similarly

situated workers defined as:

> All persons recruited, contracted or employed by Geren Rides, Inc.
> under the H-2B visa program at any time during the period 2007
> through the present

The named Plaintiffs and the class they seek to represent are hereinafter referred to

collectively as "Plaintiffs."

7.    Plaintiffs are former or current H-2B guest workers who were recruited from

Mexico by Defendant in 2007.

8.    At all relevant times, Plaintiffs were employed by Geren Rides as defined by

the FLSA, 20 U.S.C. § 203(g).

9.     During the periods of their employment by Defendant, Plaintiffs and other similarly situated employees of Defendant were engaged in the production of goods for interstate commerce or as part of an enterprise of the Defendant that was engaged in interstate commerce.

Defendant

10.     Defendant Geren Rides, Inc., is a corporation registered in the state of Georgia. The registered agent and Chief Executive Officer of Geren Rides is Joanna M. Geren, 3541 Hilary Lane, Valdosta, Lowndes County, GA 31601. At all times relevant to this action, Geren Rides, Inc. was an employer of Plaintiffs within the meaning of the FLSA.

11.     At all times relevant to this Complaint, Defendant was and is engaged in the production of goods for interstate commerce or was an enterprise engaged in interstate commerce.

12.     At all times relevant to this action, Defendant exercised the authority to direct, control, and/or supervise the work of the named Plaintiffs and the members of the Plaintiff class.

## CLASS ACTION ALLEGATIONS

13.     Plaintiffs bring this action on behalf of a class of all similarly situated workers defined as:  "All persons recruited, contracted or employed by Geren Rides, Inc. under the H-2B visa program at any time during the period 2007 through the present."  Plaintiffs do not bring this claim on behalf of any executive, administrative, and professional employees exempt from coverage under the FLSA.

14.     With respect to Counts I Plaintiffs bring this action as a collective action under the FLSA on behalf of the class defined in paragraph 15.  A collective action is appropriate because the employees described are "similarly situated" to the named plaintiffs.  29 USC § 216(b).

15.     Plaintiffs bring Count II of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined in paragraph

16.     Certification of a class of persons who may receive relief pursuant to Count II is appropriate pursuant to Fed. Civ. P. 23(b)(3) because:

a.   the class is so numerous that it is impractical to bring all its members before this Court.  On information and belief the class consists of more than 100 H-2B workers;

b.   there are questions of law and fact common to the class;

c.   the named plaintiffs' claims are typical of those of the class;

d.   the named plaintiffs will fairly and adequately protect the interests of the class, and plaintiffs have retained counsel experienced in matters of this type;

e.   questions of law common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

f.   testimony and evidence about Defendants' employment and/or recruitment practices will affect and apply to the claims of all class members.  Purely individual questions will be restricted to damage questions should liability be established. If no class action is certified, it will make it impractical for individual class members to pursue relief or may lead to a large number of separate lawsuits, all of which

will rely on the same kind of proof and take roughly the same amount of time, causing an unnecessary burden on the courts.

## STATEMENT OF FACTS

17.    In 2006, Geren Rides, Inc. applied to the U.S. Department of Labor for temporary certification to employ temporary foreign workers through the H-2B program, also known as the guestworker program, to begin working in the U.S. in 2007 to work as traveling production helpers.

18.    In each of the relevant years, Defendant offered Plaintiffs employment, either directly or through an agent, that included, inter alia, the contract terms set forth in the following documents:

   a.    Application for Alien Certification known as ETA form 750 (hereinafter "ETA 750") for each of the relevant years;

   b.    Additional documents submitted to either the INS or the USCIS of the Department of Homeland Security and to the Department of State;

   c.    The regulations governing the foreign guestworker visas, 20 C.F.R. part 655;

   d.    The written disclosure of the terms offered by Defendant provided to the Plaintiffs; and

19.    Each of the ETA 750 forms submitted to the U.S. Department of Labor
included the following certifications:

    a.  "The wage offered equals or exceeds the prevailing wage and I guarantee
that if a labor certification is granted, the wage paid to the alien when the
alien begins work will equal or exceed the prevailing wage which is
applicable at the time the alien begins work."

    b.  "The job opportunity's terms, conditions and occupational environment
are not in contrary to Federal, State or Local law."

20.    As part of its temporary labor certification applications, Geren Rides
prepared and submitted to the U.S. Department of Labor clearance orders, each of
which contained a certification from Geren Rides that the clearance orders
described the actual terms and conditions of employment being offered and
contained all material terms and conditions of the job. The U.S. Department of
Labor accepted the clearance orders for a temporary season beginning May 23,
3007 and lasting until November 20, 2007 that Geren Rides submitted.

21.    The clearance orders were then circulated to local job service offices in an
effort to recruit U.S. workers to fill the positions offered. When these efforts failed,
the Department of Labor certified a shortage of labor and the Department of

Homeland Security issued H-2B visas to fill the employment needs Geren Rides described in his clearance orders.

22.   The clearance orders submitted by Geren Rides served as the work contracts between the company and its H-2B workers, including the Plaintiffs.

23.   In Defendant's clearance orders, Defendant specified the minimum terms of employment which were to be offered to all H-2B workers during the period stated in the application.

24.   The terms and conditions of employment as specified in the ETA-750 and the clearance order created a contract between the Defendant and the Plaintiffs.

25.   The Plaintiffs were also beneficiaries of the agreement made between the Defendant and the Department of Labor in obtaining the certification for hiring foreign guest workers.

26.   The terms and conditions of employment offered by Defendant induced the Plaintiffs to travel from their home to the United States to work for the Defendant.

27.   Defendant willfully breached the terms of his contract with Plaintiffs by, among other things, failing to pay the basic rate of pay promised in the contract for each hour worked.

28.   Plaintiffs suffered substantial damages as a result of Defendant's breach of contract.

29.     Geren Rides then, through its agents, recruited the Plaintiffs, in their home country of Mexico, to work as production helpers in the U.S.

30.     The Plaintiffs were recruited through the *Servicio Nacional de Empleo* (the National Employment Service) ("SNE"), a Mexican federal government program that recruits Mexican nationals for jobs within Mexico and for temporary guestworker programs in the U.S. and Canada.

31.     Plaintiffs initially learned about the employment opportunity with Geren Rides through SNE representative Imelda Mauricio Montañez.  Plaintiffs were told they would work as H-2B workers in the U.S. and they would receive around $7-8USD per hour.

32.     Plaintiffs' then traveled to Monterrey, Nuevo Leon, Mexico to process their H-2B visa applications and have their interviews conducted at the U.S. Consulate office in Monterrey.

33.     Plaintiffs' were met in Monterrey by Imelda Mauricio Montañez and other representatives of the SNE, Humberto Salinas, Teresa Inguanzo Rosales, and Sandra Bederra; additionally, Plaintiffs allege that there was a Geren Rides representative present during the visa processing but Plaintiffs do not recall his name. All aided in the visa application process, and in transporting the Plaintiffs into the U.S.

34. Plaintiffs each paid between approximately $500.00 and $580.00USD in recruitment, visa and passport processing (not all Plaintiffs paid passport costs as some already had passports), and lodging and transportation fees. However, Geren Rides paid the costs of transportation from Monterrey, Nuevo Leon, Mexico to the worksite in the U.S. The approximate costs the Plaintiffs incurred are itemized as follows:

    a. SNE Recruitment Fee (Banamex deposit): approx. $100.00USD;

    b. SNE required Antidoping Test: approx. $350.00MXN (approx. $26.44USD) ;

    c. SNE required Criminal Background Check: approx. $50.00MXN (approx. 3.63USD);

    d. Mexican Passport (including costs of photos): approx. $1000.00MXN (approx. 75.54USD);

    e. U.S. Consulate Visa Interview Fee (Paid to SNE): approx $100.00USD;

    f. Club Mex Fund (paid into a personal account): approx. $100.00USD;

    g. Transportation costs from home community to Monterrey: approx. $700.00MXN (approx. $52.88USD); and

    h. Food/Lodging (in Mexico and in transit to U.S.): approx. $1650.00MXN (approx. $119.87USD).

35.    The charges for visa, passport, transportation, and border crossing expenses
described above were an incident of and necessary to Defendant's employment of
Plaintiffs and each member of the proposed plaintiff class.  The visas, passports
and transportation of workers to the United States and the employees' border
crossing fees were primarily for the benefit or convenience of Defendant.

36.    All of the expenses described in paragraph 36 were primarily for the benefit
of the Defendant.

37.    At least some of the expenses described above were, under Mexican Federal
Employment Law in effect at the place of recruitment, required to be borne directly
by Defendant or his agents as recruiters and/or contractors of Mexican citizens in
Mexico for work in the United States (see Article 28, Section I(b) of the Federal
Labor Law of Mexico).

38.    As a matter of policy that Defendant applied to all Plaintiffs, Defendant did
not reimburse Plaintiffs during their first week of work for the in-bound expenses
described in paragraph 36 nor did they reimburse Plaintiffs for their return
transportation expenses during the last week of work.

39.    As a result of the expenses described in paragraph 34 and Defendant's policy
not to reimburse those expenses, Plaintiffs did not receive the minimum wage,
overtime premium, the prevailing wage and/or living wage mandated by the FLSA,

12

the H-2B regulations, or applicable local law during their first work week or their last work week.

40.    After Plaintiffs were granted their visas, they boarded a bus carrying between 30-50 H-2B production helpers. The bus took the H-2B workers, including the Plaintiffs to the U.S. and their employment sites. Several of these H-2B workers were bound for fair operators other than Geren Rides. However, they were recruited by the same agencies and actors as the Plaintiffs.

41.    Present with Plaintiffs on the bus was a representative of Geren Rides. Plaintiffs refer to the representative as "*El Chaparrito*". This same representative confiscated all of the H-2B workers' passports and visas, including Plaintiffs' passports and visas. The passports and visas were Plaintiffs only identification documents, and the only documentation they had to prove they were authorized to be present and work in the U.S.

42.    Plaintiffs did not receive their passports until sometime later, on or about the date of their second pay day, after Plaintiffs continued to complain to their supervisors about not having access to them.

43.    On approximately May 25, 2007 the Plaintiffs arrived at the first worksite. The Plaintiffs did not receive on this first day or anytime during their employment with Geren Rides, Inc. any training in Spanish on how to assemble, operate, or

maintain the rides. The Plaintiffs were given a brief instruction lasting just a few minutes on how to turn on and off the rides, the instruction was in English and consisted mainly of finger pointing.

44.    Plaintiffs and all members of the Class present had an express, constructive, or implied agreement that Defendant would pay them wages at the rate required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the Plaintiffs and class members performed compensable work under the FLSA for the Defendant at the rate required by any applicable federal and/or state law.

45.    As a result of Defendant's failure to reimburse Plaintiffs and the Class for some of the transportation, passport, border crossing, and visa costs as described above during the first workweek, Plaintiffs and the Class were not paid all of their wages when due at the wage rate that the Defendant had agreed to pay them during the first workweek they were employed.

46.    The Plaintiffs were required to travel with Geren Rides to job sites in Georgia, Tennessee, Alabama, and Mississippi. Because of the rigorous travel and work schedule the Plaintiffs often worked more than 72 hours per week. The Plaintiffs worked additional hours when the fair was in transit; they often worked through the night to take down and clean up the rides at one location, pack them

and move to the next location, unpack them and set up the rides at that next location, then open the fair for business that same day.

47.    Geren Rides failed to keep accurate and adequate records with respect to the Plaintiffs' hours worked and wages paid.

48.    Geren Rides failed to furnish Plaintiffs earning statements.  Plaintiffs were paid a small amount, approximately $20.00USD, in cash a day and then Plaintiffs received the remainder of their wages once a week.  Every Thursday they received in cash, in an envelope with no markings, approximately $130.00USD. Accordingly each Plaintiff was paid approximately $270.00USD in cash per week.

49.    Geren Rides furnished the Plaintiffs with uniforms (a baseball hat and a t-shit bearing the Geren Rides name) which were deducted from their first paid wages, in the amount of approximately $15.00USD.

50.    The Plaintiffs contend that while they were employed by Geren Rides they were subjected to poor housing conditions. The plaintiffs lived in overcrowded trailers with no air condition, overcrowed and unclean bathroom facilities, and no kitchen facilities.

51.    At all relevant times, Defendants suffered or permitted the Plaintiffs to work or provide services to them.

52.     At all relevant times, Defendants controlled, supervised and directed the Plaintiffs in the performance of their work.

53.     At all relevant times, Defendants provided Plaintiffs with the necessary training, equipment and uniforms.

54.     During their employment with Defendants, Plaintiffs worked in excess of forty hours in a work week.

55.     Defendants did not pay Plaintiffs the federal minimum wage for all hours worked.

56.     Defendants did not pay Plaintiffs the prevailing wage (and/or living wage, where applicable) for all hours worked.

57.     Defendants are employers or joint employers of Plaintiffs.

58.     Defendants did not pay Plaintiff the overtime premium for all hours worked in excess of forty (40) hours per week.

59.     Defendants failed to pay Plaintiffs for all hours worked.

60.     Defendants failed to pay Plaintiffs all wages earned.

61.     Defendants' failure to pay wages in compliance with the Fair Labor Standards Act was willful.

62.    Defendants failed to post in a conspicuous location a poster detailing

Plaintiff's rights under the Fair Labor Standards Act as required under 29 C.F.R. §

516.4.

## FAIR LABOR STANDARDS ACT (FLSA) COLLECTIVE ACTION ALLEGATIONS

63.    The named Plaintiffs seek to bring their claims under the FLSA on behalf of

themselves individually, and all other similarly situated employees of Defendants

who worked in any pay period falling within three chronological years

immediately preceding the date on which this action was file and continuing

thereafter through the date on which final judgment is entered in this action and

who timely file (or have already filed) a written consent to be a party to this action

pursuant to 29 U.S.C. § 216(b).  They seek unpaid minimum wages, overtime

wages, and liquidated damages.

64.    Plaintiffs and the members of the FLSA class are similarly situated.

Plaintiffs and the Class came to work for Defendant as H-2B guest workers

pursuant to a visa issued under 8 U.S.C. § 1101(a)(15)(h)(ii)(b).  Plaintiff and other

FLSA class members worked for Defendant as production helpers.  Plaintiffs were

paid a flat weekly wage.

65.    Plaintiffs and the Class they seek to represent under 29 U.S.C. § 216(b) were

each paid wages less than those required by 29 U.S.C. § 206(a) during the first

workweek in each year that they were employed by Defendant. Plaintiffs, and the Class who traveled from Mexico to work for Defendant were required to pay for travel, visa, passport and border crossing expenses. These expense, which were for the benefit of the Defendant, reduced Plaintiffs' and other statutory class members' wages during the first workweek below minimum wage required by FLSA.

66.     Plaintiffs and the statutory class they seek to represent under 29 U.S.C. § 216(b) were also each paid wages less than those required by 29 U.S.C. § 206(a) during certain pay periods in each year they were employed by Defendant. This failure occurred when Defendant paid its employees a flat weekly wage regardless of the number of hours each employee was required to work during that workweek.

67.     Plaintiffs and the Class they seek to represent under 29 U.S.C. § 216(b), were each paid wages less than those required by 29 U.S.C. § 207(a) during certain pay periods in each year they were employed by Defendants in which they were required to work more than forty hours. This failure occurred when Defendant required its employees to work more than 40 hours during certain workweeks without compensating its employees at one and a half times the regular rate of pay.

18

## CLAIMS

### FIRST CLAIM FOR RELIEF:
### FAIR LABOR STANDARDS ACT (FLSA)

68.    Plaintiffs restate and reallege Paragraphs 1 through 67 as if stated herein.

69.    Defendant failed to pay Plaintiffs and the members of the statutory class at least the required federal minimum wage for each hour or part of an hour that they worked in each workweek, in violation of 29 U.S.C. §206.

70.    Defendant made unlawful wage deductions from plaintiffs and the members of the statutory class which resulted in payment of wages at a rate or in an amount less than the minimum wage rates required by the FLSA.

71.    Defendant knew or showed reckless disregard as to whether his conduct was prohibited by the Fair Labor Standards Act and its accompanying regulations.

72.    As a result of Defendants' actions, Plaintiffs and the Class have suffered, and continue to suffer, damages in the form of unpaid wages and liquidated damages that may be recovered from Defendant under 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF:
### BREACH OF CONTRACT

73.    Plaintiffs restate and reallege each and every allegation set forth in Paragraphs 1 through 68 as if stated herein.

74.    This claim arises under the common law of contracts.

75.     Defendant offered Plaintiffs, and Plaintiffs accepted employment with the Defendants on the terms and conditions set forth above.

76.     Defendant willfully breached their contract with Plaintiffs by not paying Plaintiffs at the required wage per hour for each hour of work performed under the contract.

77.     As a result, Plaintiffs suffered injury.

## JURY TRIAL DEMAND

78.     Plaintiff and the Class demand trial by Jury.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFFS PRAY FOR RELIEF AS FOLLOWS:

1.     Damages in an amount to be proven at trial;

2.     An Order certifying the Class for Counts I and II;

3.     Injunctive relief requiring Defendant comply with the terms its contractual obligations;

4.     An Order awarding Plaintiffs' their Attorneys' Fees, Costs and Disbursements;

5.     Any other relief this Court deems equitable and just.

Submitted this 22nd day of May, 2009.

Andrea S. Hirsch, Esq.
GA. Bar Number: 666557
Herman Gerel, LLP
230 Peachtree Street
Suite 2260
Atlanta, Georgia 30303
Telephone (404) 880-9500
Facsimile  (404) 880-9605
Email: ahirsch@hermangerel.com

s/ Timothy Becker
Timothy Becker, Esq. *(p.h.v. pending)*
MN. Bar Number 256663
Zimmerman Reed, PLLP
651 Nicollet Mall
Suite 501
Minneapolis, MN 55402
Telephone (612) 341-0400
Facsimile  (612) 341-0844
timothy.becker@zimmreed.com